**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-20051-Cr-MARTINEZ/BECERRA**

**UNITED STATES OF AMERICA**

**v.**

**RUBEN MONTANEZ-MIRABAL,**

**Defendant.**
_____/

**STIPULATED FACTUAL BASIS**

The United States and RUBEN MONTANEZ-MIRABAL ("the defendant") hereby stipulate and agree that had this matter proceeded to trial, the United States would have offered evidence and testimony to establish the following factual basis beyond a reasonable doubt, including evidence and testimony that at all relevant times:

The Federal Bureau of Prisons ("BOP") was an agency of the executive branch of the Government of the United States.   BOP had jurisdiction over the management and regulation of all Federal penal and correctional institutions, and over the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.   Persons who were employed by BOP, including medical staff, were employees of an agency of the Government of the United States and were, therefore, public officials who acted on behalf of BOP.

The Federal Detention Center-Miami ("FDC-Miami") was an administrative security Federal detention center located in Miami, Miami-Dade County, in the Southern District of Florida, and it was a prison within the meaning of 18 U.S.C. § 1791(d)(4).   Federal law

1

forbade the introduction or possession of a prohibited object in a prison, including a Federal correctional, detention, or penal facility, as specified in 18 U.S.C. § 1791(d)(4). As such, the introduction and/or possession of a prohibited object in FDC-Miami was forbidden under Federal law.   Controlled substances and unauthorized cigarettes were prohibited objects within the meaning of 18 U.S.C. § 1791(d)(1).

At all relevant times, the defendant was employed by BOP as a registered nurse. In this position, the defendant was a public official who acted on behalf of BOP, and as such, it was a violation of his official duty to introduce and/or possess, and to allow the introduction and/or possession of, prohibited objects inside FDC-Miami.   In his position as a BOP registered nurse, the defendant worked full-time at FDC-Miami.   The person identified in the Information as "Associate 1" was an individual connected to the defendant.   Associate 1 was not at any time employed by BOP.   The person identified in the Information as "Inmate 1" was an inmate housed at FDC-Miami serving a federal sentence of incarceration. The person identified as "Individual 1" was an individual connected with Inmate 1.   The person identified as "Individual 2" was an individual connected to Individual 1. Neither Individual 1 nor Individual 2 were inmates of FDC-Miami or any other BOP institution.

From an unknown date, but at least as early as on or about November 1, 2021, up to and including on or about August 24, 2022, the defendant, working in conjunction with Associate 1 and others, would directly and indirectly solicit and obtain illegal payments and things of value from FDC-Miami inmates in exchange for doing acts, and omitting to do acts, in violation of his official duty as a BOP employee at FDC-Miami.   In particular,

2

the defendant offered and agreed to provide prohibited objects, including controlled substances, to inmates at FDC-Miami, including Inmate 1, in exchange for payments of U.S. currency and other things of value, including the free use of luxury vehicles and sports cars, from those inmates and from others acting on behalf of those inmates, including Individual 1 and Individual 2.

To carry out the contraband smuggling and bribery agreements he made with FDC-Miami inmates, the defendant received the controlled substances from individuals acting on behalf of those FDC-Miami inmates, including Individual 1 who was acting on behalf of Inmate 1, at locations outside of FDC-Miami.   The defendant would then bring these controlled substances, and other prohibited objects such as cigarettes, into FDC-Miami and provide them to those inmates by directly delivering them and also by concealing them in agreed locations within FDC-Miami where the inmates would be able to retrieve them.

The defendant used a number of different methods to receive the payments he accepted in exchange for delivering these prohibited objects to those FDC-Miami inmates.   These included requesting and receiving cash bribes in person from individuals acting on behalf of those FDC-Miami inmates, and directing and requesting that those FDC-Miami inmates, including Inmate 1, have his bribe payments sent by financial transfer services such as Zelle to recipients he would designate, including Associate 1, who would then forward those payments to the defendant.   In addition, the defendant also requested and received from Inmate 1 the occasional free use of luxury vehicles and sports cars as part of his bribe payments.

## Specific Deliveries of Prohibited Objects and Bribe Payments

In or around November 2021, the defendant brought prohibited objects into FDC-Miami and provided them to Inmate 1 in exchange for things of value from Inmate 1.   On or about November 1, 2021, the defendant directed Inmate 1 to have a payment made to Associate 1 in exchange for providing prohibited objects to Inmate 1 inside FDC-Miami. This payment was made on or about November 2, 2021, when Associate 1 received $600 via Zelle from Individual 1 that was sent on behalf of Inmate 1 to Associate 1 at the direction of the defendant.

In late January 2022 and early February 2022, the defendant brought prohibited objects, including controlled substances, into FDC-Miami and provided them to Inmate 1 in exchange for things of value.   In particular, the defendant requested that Inmate 1 arrange for him to have the free use of luxury vehicles and sports cars as partial payment for his delivery of prohibited objects.   Inmate 1 complied with the defendant's request, and as partial payment for providing Inmate 1 with prohibited objects, including controlled substances, in late January 2022, the defendant accepted the free use of a Lamborghini sports car, and in early February 2022, the defendant accepted the free use of a Rolls-Royce.   The free use of these vehicles was arranged for him by Inmate 1.

On or about March 1, 2022, the defendant, pursuant to an agreement with Inmate 1, brought prohibited objects, that is, rolled-up papers soaked with a controlled substance, into FDC-Miami and hid them under a shelving unit in a mop closet on the 9th floor of FDC-Miami so that Inmate 1 could retrieve them.   On this same day, BOP investigators observed this activity on the 9th floor video cameras of FDC-Miami, and they then

4

conducted a search of that mop closet and found approximately thirty-seven (37) pages which were discolored and rolled together, bound by rubber bands, and hidden under a shelving unit.  These pages were subsequently submitted to the FBI Laboratory, which determined that the sample page tested contained a Schedule I non-narcotic controlled substance identified as ADB-Butinaca.  In addition, these pages were submitted for fingerprint examination, and according to FBI Laboratory findings, the defendant's fingerprints were positively identified on these papers.

On or about March 3, 2022, Associate 1 received $1,500 via Zelle from Individual 2 that was sent at the direction of the defendant as partial payment for providing prohibited objects, including controlled substances, to Inmate 1 inside FDC-Miami.  Shortly after receiving the $1,500 via Zelle from Individual 2, Associate 1 sent $1,500 via Zelle to the defendant on the same day.  The same pattern of payments at the direction of the defendant was repeated on or about March 17, 2022, when Associate 1 received $1,200 via Zelle from Individual 2, and then sent $1,200 via Zelle to the defendant on the same day.

In or around July 2022, the defendant made an agreement with Inmate 1 to provide him with controlled substances inside FDC-Miami in exchange for a cash payment of $7,000 and an additional $1,000 to be sent via Zelle to Associate 1 after the delivery was completed.  After additional communications regarding the logistics of this delivery, on or about July 25, 2022, Associate 1 contacted Individual 1 and told Individual 1 that the delivery would need to be delayed because the defendant was concerned he was under investigation.

During the course of the criminal activity charged, the controlled substances being brought in by the defendant were synthetic cannabinoids soaked into sheets of paper. The defendant was also aware that inmates, including Inmate 1, were re-selling these drug-soaked documents for approximately $1,500 per page. During the course of the charged conduct, the defendant delivered in excess of 100 but less than 140 drug-soaked pages to Inmate 1 and other FDC-Miami inmates.

The United States and the defendant agree that this Stipulated Factual Basis, while not containing all facts known to the United States, is sufficient to satisfy all the necessary elements required to establish the guilt of the defendant to the crimes charged in the Information.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 3/8/23          By: _____
                          Edward N. Stamm
                          Assistant United States Attorney

Date: 5/8/23          By: _____
                          Bijan S. Parwaresch, Esq.
                          Attorney for Defendant

Date: 3/4/23          By: _____
                          Ruben Montanez-Mirabal
                          Defendant